LEALAIMATAFAO MASE, Plaintiff

v.

LAUTELE NOA, Defendant

FAIGAME LAUTELE IUTA for Lautele Iuta and
Overland Olotoa, Plaintiffs

v.

LEALAIMATAFAO MASE for the
Lealaimatafao Family, Defendants

LT No. 29-82
LT No. 35-87

High Court of American Samoa
Land & Titles Division

November 17, 1988

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Lealaimatafao Family, Charles Ala'ilima
For Iuta and Olotoa, Asaua Fuimaono

This matter originated with an attempt by claimant Lautele Noa or Faigame Lautele Iuta (hereinafter "Lautele") to procure the registration in individual ownership of certain lands located in Tafuna, Tualauta County and delineated in yellow in a composite prepared by the government's chief surveyor and marked Exhibit "1". Such claim is more particularly described in the Private Drawing No. 61-14-81 certified by the government survey office and is a part of the registration record kept by the Territorial Registrar and filed eventually with the Court under docket No. LT. 29-82.

Chief Lealaimatafao Mase (hereinafter "Fao") objected to this attempted registration as encompassing communal lands of the Lealaimatafao family. The extent of Fao's claim is delineated in red in Exhibit "1" and more particularly described in Drawing No. 431-8-87, also certified by the government survey office and is a part of the registration record kept by the Territorial Registrar and filed with the Court under docket No. LT. 35-87. In essence, our record reflects a dispute over virtually the same piece of real

40

property and hence these matters have been consolidated for trial on the merits.

Mrs. Overland Olotoa's interest in this matter arises through Lautele who is said to have sold her the southern half of the land as claimed by Lautele, hence the yellow bisection of Lautele's claim as seen in Exhibit "1".

The land is bounded at its northern extreme by the Iliili/Airport highway, extending in the southeast and sami direction to the government airport boundary fence. On its western border are lands which have been registered in individual ownership by one Aleki Noa. Its eastern or airport side abuts some 12.5 acres which have been registered by Lautele in individual ownership. Much of this registered land has been sold by Lautele to Mrs. Olotoa.

The testimony as expected was conflicting as the parties are claiming essentially the same land area.

Fao is the senior matai of the Lealaimatafao family of Iliili and a ranking matai of the Tualauta County. He is eighty years old and has held his family's title since 1957. He testified that his family has many lands scattered throughout the county occupied by various family members. He testified that he first went on the disputed land and commenced clearing it in the year 1961. The reason he went into the area was that it was virgin bush at the time and that other members of his family had also come into the vicinity for the same reasons. He further testified that his clearing and occupation extended from the highway all the way to the government's airport fence. From the fruits of his labor, he also claimed that he had obtained a government contract to supply the hospital with taro and vegetables in the year 1963. Fao also claimed to have had a home built on the land together with a water tank. In those days before water development reached the area, his tank was a source of water for other people working nearby. The home was said to have been levelled by the hurricane of 1966 and never rebuilt. Fao testified that since the hurricane he had ceased further major projects on the land although he continues using the crops thereon.

41

He was unaware of Lautele's surveying the area; however, he found out about the proposed registration posting and accordingly filed an objection. He discovered at one time Olotoa planting in the rear portion of his land and he instructed his then counsel to put a stop to this. He seems to recall an order to that effect but had no idea what happened to the case. He recalled participating in meetings at the Office of Samoan Affairs which determined that the matter should be sent to the Court for determination. Since 1981, nothing has happened in the case, although the coconuts which he claimed to have planted in the rear of his land have since been removed.

Other members of the Lealaimatafao family corroborated their senior matai's testimony by also bearing witness to family work on the land.

Lautele is 63 years of age and is also from the village of Iliili. He claims to have been involved with implementing an early decision by the youth (aumaga) of Iliili to cultivate bush land (taloloa) in order to serve the village. He commenced clearing land in 1938 and worked his way towards the area which comprises his registered claim. He left the island after the war with a contingent of the armed forces and returned in the year 1948 resuming work on the land. It was quite obvious, however, that claimant was somewhat confused with his dates. He, like Fao, talked of his clearings as extending to the government's airport fence whereas the airport condemnation proceedings involving the villagers of Iliili occurred in 1957. See Condemnation Proceedings In re Tafuna Airport, No. 16-1957 (Nov. 20, 1957), reported in part in 3 A.S.R. 302. Presumably, Lautele's development efforts were therefore still ongoing at a time subsequent to the establishment of the airport boundaries in the latter part of 1957.

Lautele acknowledges that Fao had worked on the land but explains Fao's presence as coming about through his permission given in the year 1960. Prior to that, it was only he and one Aleki Noa of his family that worked the area. Permission given to Fao, however, was said to extend only to the northern half of the land. He denied Fao's claims to having encountered virgin bush when the latter had gone on the land, testifying to the contrary that when Fao came upon the land, the bush

42

had been levelled and the land was covered with undergrowth. With regard to the home claimed by Fao as having been built on the land without permission from Lautele, the latter responded that the said building was erected at a time when he was again off island. In Lautele's assessment, the home built by Fao was nothing more than the sort of typical makeshift plantation structure which families would build for rest periods during a work day.[1]

As Lautele found buyers for land, he would have an area surveyed and then seek to procure registration in individual ownership. He successfully registered some 12 acres of land without objections until Fao got notice of the particular registration attempt now before us. The registration here was sought after claimant Lautele had agreed to sell some 2 acres to Mrs. Olotoa. By way of explaining background to the sale, Mrs. Olotoa testified that she had previously acquired some other parcels from Lautele. She stated that over the years, Lautele had been a good business customer of hers. She helped Lautele with his own business by supplying him credit. As he offered her land for sale, she would give him the purchase price and he, in turn, would attend to securing registration and finally deliver a deed. In this same fashion she recalls giving claimant $18,000 or $19,000 for another 2 acres of land in 1980. With Fao's objection, she is still awaiting a deed on this last purchase. When Mrs. Olotoa was asked by the court whether she obtained legal advice for her land transactions, she responded that she trusted claimant and essentially took a "gamble" each time that he would deliver. Claimant had proved reliable on prior sales.

---

[1] What is implied by claimant Lautele is that a permanent structure placed on a tract of land is an unequivocal assertion of "pule" or ownership. The construction of a plantation rest place which is not permanent in nature and easily dismantled is an equivocal act. He argued that the provisional nature of Fao's structure was evidenced by its destruction in the 1966 hurricane whereas a Samoan type fale which he had built in the vicinity had withstood that storm. It was his structure that was more permanent in nature.

43

When she moved onto the land and attempted to plant, Fao complained of her encroachment. A court case was filed in 1980 and in Mrs. Olotoa's recollection the outcome of the case favored her side. Counsel referred us to <u>Lealaimatafao v. Manuma</u>, LT. No. 56-80 (1980) which is a matter that never went to judgment. The file reflects an application by Fao for provisional injunctive relief which was denied on Fao's failure to sustain his burden of likelihood of prevailing at trial. No further action was taken on this file although in the following year Lautele attempted to register the land and met with Fao's objection.

### Discussion

On the preponderance of the evidence, we find that the original clearing of the land was undertaken by Fao and his family. The Court finds itself with too many reservations to accept the claim by Lautele that Fao entered the area through his permission. That a ranking matai of a village would require permission of a non-titled person to enter a "taloloa" area does not set well with the cultural norm. If, as suggested by Lautele, Fao was merely looking for a place to plant crops, as opposed to settlement, the question which naturally arises is why would a leading matai be dependent for crop lands on the clearings of an untitled member of the village while overlooking the remainder of the family's communal holdings. According to the dictates of custom, these communal holdings are in the service of the matai. Testimony to the effect that a matai in Fao's standing would need to be in search for borrowed lands to plant crops just seems unlikely and in our opinion less credible than that testimony by Fao to the effect that his purpose in the area was the acquisition of additional family lands. The permission asserted is viewed as even less probable given the undisputed evidence that other Fao family members, Falefia and his family, were also in the vicinity clearing and cultivating the opposite side of the road as original claimants. Mrs. Folole Falefia, 65 years of age, testified that while she and her husband were so establishing their claim to the bush they did also at times participate as Lealaimatafao family members in assisting their senior matai with his development. She corroborated Fao's testimony that when the latter came into the

44

area and commenced clearing, the land was still virgin bush.

Additionally, the nature of the home built on the disputed land is simply inconsistent with permissive use. The attempt by claimant Lautele, as well as his witness Sipili Atualevao, to play down the significance of this inconsistency, by referring to the home built as being only a provisional plantation rest structure, did nothing more than taint their credibility. All agreed that the house was a two story structure. The house was built by a Rev. Iese Aasa, also of Iliili at the time, and his son Avemaia Aasa. The latter described the building as a two story "L" shaped structure, 16'x 24' + 16'x 16' in dimension. The upper story was constructed of wood which sat on concrete columns while the ground floor area was left unwalled or open.

The building of this large family home, coupled with the construction of a water tank in a then undeveloped area and the establishment of a commercial farm, are all real evidence of settled occupation by Fao in the area and quite the antithesis of borrowed surroundings.

Against this, counsel for claimant argues that because there are extensive registered individual holdings to the airport side of the disputed land in the name of claimant and similar extensive holdings to its Iliili side, the inference arises that the disputed area is the individually owned land of claimant Lautele.

The inference does not follow and the argument completely overlooks the law on the matter. The cases had early established, to the extent that it is trite law in the territory, that Samoan families acquire title to bush land through first occupancy and use, coupled with claim to ownership. However, a mere claim to ownership of bush land does not establish title to it. <u>Soliai v. Lagafua,</u> 2 A.S.R. 436 (1949). In the matter before us, there is just no room for the inference contended when there is actual evidence that the objectors (Fao and his family) cleared, occupied, planted, and asserted ownership by the sort of development outlined above. Thus the argument by counsel in the circumstances is at best no more than a mere claim to ownership.

45

Further, in the case of "individual ownership" claims, the law demands more exacting proofs. As we understand the cases, such a claim involves more than the felling of trees and the planting of some crops at one time or another. In _Fonoti v. Malufau,_ LT. No. 1406-74 (1975), the Court spoke of proofs for individually owned claims as follows:

> The Court has said on a number of occasions that there is a single question in a Registration case where the request is for individually owned land, and that is, has the applicant actually cleared, cultivated and used all of the property offered as a plantation . . . [I]f it is established that _all_ of the land has not been so used, it shall be denied in Toto. The fact that a portion of the land may have been used as a plantation by the applicant is of no importance.

> To qualify as a plantation, there must be . . . evidence of planting of trees and/or plants. The occasional coconut, mango, banana or other tree is not considered a plantation and no credit will be given for such.

> In this case . . . a portion of the land offered for registration is not and has not been a part of a plantation, and in view of the rule that to qualify for registration as individually owned land, _all_ of the land must be so used, this offer for registration is denied.

After a review of the cases, the Court in _Fanene v. Magalei,_ LT. No. 64-77 (1977), described individually owned land as that land: 1) cleared in its entirety or substantially so from the virgin bush by an individual through his own initiative and not by, for, or under the direction of his aiga or its senior matai; 2) cultivated entirely or substantially so by him; and 3) occupied by him or his family or his agents continuously from the time of the clearing of the bush.

It will thus be seen that in order to sustain a claim in individual ownership, it must be minimally shown not only that the clearing of virgin bush (independent of aiga ties) was substantial, but that cultivation and continued

46

occupation of the cleared land has also been substantial. In the Court's view, Lautele had failed to prove on the preponderance of the evidence that he had in fact substantially cleared the area in dispute from bush land. He also failed in his evidence to show actual and substantial cultivation although he alluded to planting certain rows of coconuts as boundary markers, and certainly he made a very poor showing of continuous occupation and use by attempting to explain the adverse fact of Fao's presence as being through his permission. His general claims to have been the first to clear lands in the area coupled with his success in having obtained registration to a large part of the lands in the area, do not establish a claim in individual ownership. Lautele's offer for registration must therefore be denied in toto.

We do find that the evidence preponderates in favor of Fao's claim to communal ownership. We are mindful of the adverse effect our conclusions have on Mrs. Olotoa, however she must look, in terms of relief, to Lautele from whom her rights derive. She candidly admitted risk taking in her land dealings with claimant. She gave purchase money up front without the least concern for a title search and consequently her last transaction has proven to be the "gamble" which has not paid off.

On the foregoing, it is the judgment of the Court that the lands delineated in red in Exhibit "1", and more particularly described in Drawing No. 431-8-87, are the communal family land of the Lealaimatafao family of Iliili. The Territorial Registrar may register accordingly. The application by Lautele for registration is denied.

It is so Ordered.